# IN THE COURT OF APPEALS OF IOWA

––––––––––––––––––

No. 24-1982
Filed July 22, 2026

––––––––––––––––––

**State of Iowa,**
Plaintiff–Appellee,
v.
**Charles Wayne Dickson,**
Defendant–Appellant.

––––––––––––––––––

Appeal from the Iowa District Court for Plymouth County,
The Honorable Zachary Hindman, Judge.

––––––––––––––––––

**AFFIRMED**

––––––––––––––––––

Martha J. Lucey, State Appellate Defender, and Bradley M. Bender,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Sheryl Soich,
Assistant Attorney General, attorneys for appellee.

––––––––––––––––––

Considered without oral argument
by Tabor, C.J., Langholz, J., and Vogel, S.J.
Opinion by Tabor, C.J.

1

**TABOR, Chief Judge.**

A jury found Charles Dickson guilty of sexual abuse in the second degree and incest. On appeal, he argues (1) the district court erred in denying his proposed jury instruction, (2) there was insufficient evidence to support the jury's guilty verdicts, and (3) the district court abused its discretion in imposing consecutive sentences. Because the proposed jury instruction was unnecessary, the evidence was overwhelming, and the district court followed sentencing procedure, we affirm.

## I.      Facts and Prior Proceedings

In July 2023, fourteen-year-old H.D. learned that she was twenty-three weeks pregnant, with a conception date in February when she was thirteen. Six weeks later, during a follow-up appointment, the doctor found no fetal heartbeat. H.D. was induced, giving birth to a stillborn fetus.

Meanwhile, in early August 2023, Dickson called the police chief to report that his daughter, H.D., had been communicating with a "male subject" for several months via Snapchat. Dickson claimed that the male came to their home one afternoon in February, and that H.D. was now pregnant as a result. Dickson said he didn't know the individual's name. The police chief told Dickson that officers would subpoena H.D.'s phone as part of their investigation. The police chief also asked Dickson to take H.D. to the Child Advocacy Center (CAC) for an interview. The next day, Dickson called the police chief again and recanted his report, saying he was concerned that H.D. would face criminal charges. Dickson also failed to take H.D. to the CAC, claiming the lawyer he had retained had advised against it.

After H.D. lost the baby, police obtained search warrants seeking DNA samples from Dickson, H.D., H.D.'s mother, and the fetal remains. The

special agent assigned to the case collected buccal swabs from Dickson, H.D., and H.D.'s mother. The hospital pathologist collected tissue samples from the fetal remains. All samples were transported to the Iowa Division of Criminal Investigation (DCI) criminalistics lab for testing.

DNA testing showed Dickson was the biological father of both H.D. and H.D.'s baby. The lab reported that Dickson's probability of being the baby's father was 99.9999%, the highest probability the lab reports for paternity testing. The State charged Dickson with sexual abuse in the second degree, in violation of Iowa Code sections 709.1, 709.3(1)(b), and 903B.1 (2023), and incest, in violation of Iowa Code sections 726.2 and 903B.2 .

Trial was held in October of 2024. The DCI criminalist testified to the DNA testing process and her analysis of the test results. The prosecution brought forth an expert witness to testify to the responses and reactions of children who endure sexual trauma. H.D. also testified to the sexual abuse she endured, stating that her father had sexual intercourse with her on several occasions resulting in her pregnancy. The defense presented no witnesses.

Before sending the jury to deliberate, the court met with the parties to discuss Dickson's suggested jury instruction. That instruction defined the term "sex act" as provided in *State v. Pearson*, 514 N.W.2d 452, 455 (Iowa 1994). The court rejected the instruction, believing it had the potential to "lead the jury astray." After less than an hour of deliberation, the jury found Dickson guilty on both counts.

The district court held a sentencing hearing two months later. At that hearing, H.D.'s mother presented a victim impact statement, disclosing her daughter's trauma but also the progress that the teenager had been making since Dickson was being held accountable for his actions.

It broke my heart to see my daughter go through what she went through. [Dickson] was still supposed to be protecting my daughter and my other children instead of what he did to them . . . . But right now—my daughter is happy now. She's smiling. She's being a teenager now. My kids are having a great time. They're not scared of their father anymore.

The district court sentenced Dickson to a term of incarceration not to exceed twenty-five years with a seventy percent mandatory minimum for count one and a term of incarceration not to exceed five years for count two. The court ordered that Dickson's terms of incarceration run consecutively for a total indeterminate sentence of thirty years. Dickson appeals on three grounds.

## II.   Analysis

### A. Jury Instructions

Dickson claims that the district court erred in rejecting his proposed instruction defining "sex act" for the jurors. Dickson's proposal tracked the language from *Pearson*, 514 N.W.2d at 455, which was reaffirmed in *State v. Montgomery*, 966 N.W.2d 641, 650–51 (Iowa 2021). His counsel read it into the record:

> I propose a—an additional sentence . . . . 'Such circumstances include, but are not limited to, whether the contact was made to arouse or satisfy sexual desires of the defendant or the alleged victim; the relationship between the defendant and the alleged victim; whether anyone else was present; the length of the contact; the purposefulness of the contact; whether there was a legitimate, nonsexual purpose for the contact; where and when the contact took place; and the conduct of the defendant and alleged victim before and after the contact.'

The State and the court agreed that this proposed instruction was an accurate statement of the law. But the court denied the additional language, reasoning:

[T]here's an inherent risk of saying here's a list of things that you can potentially consider, even if we say that list is non-exclusive, because it could potentially lead the jury astray into thinking . . . it's circumstances like these or closely-related ones, or planting things in the jury's mind that . . . aren't relevant to this particular case . . . .

. . . .

The model instruction is already open-ended, and . . . just as a matter of common sense, it's really going to include all of these things in the jury's mind already. So the request for that additional language will be denied.[1]

We review the refusal to give a requested jury instruction for correction of errors at law. *State v. Spates*, 779 N.W.2d 770, 775 (Iowa 2010). If the proposed jury instruction is discretionary, our review is for an abuse of discretion. *State v. Davis*, 975 N.W.2d 1, 8 (Iowa 2022). We will not reverse for error in an instruction "unless the error was prejudicial to the party." *Spates*, 779 N.W.2d at 775.

While Dickson's proposed jury instruction correctly stated the law, it was not required here. We agree with the district court's distinction between the facts in *Pearson* and the facts in this case. *Pearson* required the jury to decide if the defendant's actions constituted a sexual act, but that is not in

---

[1] In its full analysis, the district court highlighted the differences between *Pearson* and the case before it. In that case, Pearson challenged whether pressing a child's clothed buttocks against his covered penis while he masturbated was "sexual contact." *Pearson*, 514 N.W.2d at 454–55 (rejecting Pearson's argument that an adult who bounces a child on his or her lap risks a conviction of sexual abuse). To clarify what qualified as "sexual contact," the *Pearson* court provided examples of touching that could be sexual in nature depending on the type of contact and surrounding circumstances. *Id.* at 455–46. The district court noted that *Pearson* and *Montgomery* embraced the principle that "sexual in nature doesn't just mean that specific sexual intent to gratify or to arouse." *See id.*; *see also Montgomery*, 966 N.W.2d at 650–51. In Dickson's case, the jury only needed to determine whether Dickson committed the sex act that resulted in H.D.'s pregnancy.

dispute here. There is no non-sexual explanation for the sexual intercourse that resulted in H.D.'s pregnancy. The jury only needed to find whether a sex act occurred, not determine what constitutes a sex act.

Dickson also argues that denial of his proposed instruction was prejudicial. Prejudice occurs "if jury instructions have misled the jury, or if the district court materially misstates the law." *Hunter v. City of Des Moines*, 34 N.W.3d 484, 505 (Iowa 2026). Here, the uniform instructions correctly summarized the relevant law for both charges. The *Pearson* instruction could have confused the jury by sowing doubt about the sexual nature of Dickson's actions. The district court properly rejected his proposed instruction.

### B. Sufficiency of the Evidence

To convict Dickson of sexual abuse in the second degree, the jury had to find that the State proved these elements beyond a reasonable doubt:

> 1. On or about [ January to March 2023], [Dickson] performed a sex act with H.D.

> 2. [Dickson] performed the sex act while H.D. was under the age of 14 years.

Similarly, for incest, the State had to prove:

> 1. On or about [ January to March 2023], [Dickson] performed a sex act with H.D.

> 2. At the time of the sex act, [Dickson] and H.D. were related to each other as father and daughter.

> 3. At such time, [Dickson] knew he and H.D. were so related.

Dickson contests the sufficiency of the State's evidence. He challenges H.D.'s testimony and asks us to buck settled precedent to find that a victim's testimony must be corroborated by physical evidence.

We review for correction of legal error and will uphold the verdicts if supported by substantial evidence. *State v. Kieffer*, 17 N.W.3d 651, 655 (Iowa 2025). Substantial evidence must "convince a rational fact finder the defendant is guilty beyond a reasonable doubt." *State v. Kelso-Christy*, 911 N.W.2d 663, 666 (Iowa 2018) (citation omitted). The jurors must weigh the credibility of witnesses and whether to accept or reject evidence. *See State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). We review the evidence in the light most favorable to the State. *Id.*

We reject Dickson's argument for two reasons. First, we are bound by our supreme court's precedent holding that a victim's testimony alone may be substantial evidence of guilt. *See State v. Knox*, 536 N.W.2d 735, 742 (Iowa 1995) ("The law has abandoned any notion that a rape victim's accusation must be corroborated."). Second, even if corroboration was required, the State *did* present substantial evidence to corroborate H.D.'s allegations. The pregnancy itself and the DNA paternity testing provided overwhelming evidence of a sex act.

Dickson attacks the DNA testing. He argues that two factors affected its accuracy: (1) he and H.D. were not asked if they had eaten, drank, or smoked before the buccal swabs were taken, and (2) the DCI lab failed to consider Dickson's blood relation to H.D.'s mother.

At trial, the special agent admitted he did not inquire about any food or drink before swabbing Dickson and H.D. But the DNA criminalist said, "It wouldn't affect the accuracy of the DNA profile" and it would not cause false positives. Likewise, the criminalist explained that she had been made aware of some distant relation between Dickson and H.D.'s mother, but that

biological tie did not interfere with her result on Dickson's paternity.[2] She also rejected the idea that Dickson being the baby's grandfather would explain the amount of his DNA present, stating that

> Due to grandparents only shar[ing] approximately twenty-five percent of the DNA with a grandchild, there would have been an elimination for paternity. . . .
>
>     . . . .
>
>     . . . My results are accurate and reflect true paternity. I don't see any cause for concern that that interrelationship or possibly distant relationship had any effect on my testing.

Substantial evidence supported the guilty verdicts.

**C. Sentencing**

Lastly, Dickson challenges his consecutive sentences. He argues that the court relied upon the nature of the offenses alone in imposing the thirty-year term. He concedes that the "seriousness and gravity of the offense is an important factor," but he contends that the court could not order consecutive sentences based on that factor alone.

We review sentencing challenges for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We will not vacate a sentence unless the district court abuses its discretion or we find a defect in the court's sentencing procedure. *Id.* A district court's consideration of impermissible factors is an abuse of discretion, and the defendant then would be entitled to a new sentencing hearing. *State v. West Vangen*, 975 N.W.2d 344, 355 (Iowa 2022). A sentencing court must enumerate specific reasons for

---

[2] It was revealed during the investigation that H.D.'s parents were second cousins.

imposing a consecutive sentence. *State v. Hill*, 878 N.W.2d 269, 275 (Iowa 2016).

True, "no single factor, including the nature of the offense, [can] be solely determinative" of the sentence imposed. *State v. McKeever*, 276 N.W.2d 385, 387 (Iowa 1979). But that is not what occurred here. Before imposing the sentences, the court "considered all of the relevant information before it. That includes the statutory sentencing schemes, the evidence properly before the Court, the victim impact statement, and the arguments of counsel."

In determining whether the sentences would run concurrently or consecutively, the court found that "the nature of [the] two offenses . . . are especially significant under the particular circumstances of this case." The court then underscored the unique harm of the incest.

> A parent is supposed to protect his child from harm. But here, [Dickson] harmed his child, and he did so not just by committing a sex act on her, but by doing so in a manner that resulted in her becoming pregnant.
>
> And we have heard through the victim impact statements and through the evidence presented at trial just what a significant effect [Dickson's] conduct and the harm caused by that conduct has had on the victim in this case
>
> . . . .
>
> [Dickson] must be punished for committing a sex act on a child, and [he] must be separately punished for committing a sex act on his own daughter.

While the court did highlight the severity of the crimes, that was not its sole reason for running the sentences concurrently. The court considered Dickson's age, the need to protect the community from further offenses, his rehabilitation, and the effect of Dickson's conduct on H.D.—along with "the

separate and serious nature" of sexual abuse and incest. *See State v. Jannusch*, No. 24-1613, 2026 WL 221644, at *2 (Iowa Ct. App. Jan. 28, 2026) (upholding consecutive sentences for a father convicted of sexual abuse and incest). The district court did not abuse its discretion in ordering the consecutive sentences.

**AFFIRMED.**